JAMES CARROLL *vs.* JOSEPH MARCOUX.

Androscoggin.    Opinion December 11, 1903.

*Bite of Dog,* Trespasser.    *Due Care.    Action.    R. S. (1903), c. 4, § 52.
Stat. 1895, c. 115.*

1.  By force of the statute 1895, c. 115, R. S. (1903), c. 4, § 52, c. 3, § 53, an injury to person or property by a dog is a trespass by the owner or keeper of the dog, whatever the dog's disposition, or the care exercised by its owner or keeper.

2.  The fact that a person injured by a dog was at the time a trespasser upon the premises of its owner, or keeper, does not of itself exempt the latter from his statutory liability for the injury.

3.  The fact that an entry upon the premises of the owner, or keeper, of a dog was wilful and wanton does not of itself exempt him from the statutory liability for the attack of his dog upon the person so entering.  The wilfulness or wantonness of an act is not in the outward visible aspect of the act, but only in the mind of the actor; and hence cannot be a provocation to the dog.

Exceptions by plaintiff.    Sustained.

[EXCEPTIONS.]

This was an action of trespass brought under the Stat. of 1895, c. 115, R. S. (1903), c. 4, § 52, which provides: "When a dog does damage to a person or his property, his owner or keeper and also the

parent, guardian, master or mistress of any minor who owns or keeps such dog, forfeits to the person injured, the amount of the damage done, to be recovered by action of trespass." Verdict for defendant.

The evidence showed that the plaintiff was a peddler; that he called in the day time at the house of the defendant and entered without permission; that the defendant's wife and young children were in the house alone; that the defendant's dog, a common hound, was lying behind the stove when the plaintiff entered; that upon the abrupt and sudden entrance, as claimed by the defendant, the dog seized the plaintiff by the leg and bit him as set out in the plaintiff's declaration.

The presiding justice in the course of his charge to the jury gave the following instructions, to which exceptions were seasonably taken:

"Now, if you find on the other hand that this plaintiff was mistaken in his version of the story, that this woman, the defendant's wife, is correct in her statement as to how he entered the house, then I submit to you the further question of whether the entry of that house by the plaintiff without her permission, without her knowledge, if not against her consent, was a wilful and wanton entry. It is said in law that a man's house is his castle, and I state to you as a matter of law that under ordinary circumstances (of course friendly calls, if I called to your house or you to mine would not come in the category that makes men trespassers), but if a stranger, an entire stranger attempts to enter my house or your house without our permission I say as a matter of law he has no right to enter; and, that I have, or you have, or any other person, has a right to resist such entry with sufficient force to prevent it. Now, applying this principle to the case at bar, if this plaintiff entered this house as the defendant's wife says he did, rapped and walked in, a strange house, a house whose inmates he says he never before knew, was such entry wanton and wilful? Now what does wilful mean? It means intentional, an act done intentionally, an act done knowingly and stubbornly and of stubborn purpose as Bouvier in his Law Dictionary says.

Now, then, I submit to you, whether if this woman's statement is true the plaintiff in this case entered wilfully, whether he entered intentionally, knowingly and of stubborn purpose, intending to get into that house. If he did he entered wilfully, and was it a wanton

entrance? Wantonly, says Bouvier, is recklessly, without regard to propriety or the rights of others. Was this entry of this house, if this woman states the manner of entry correctly, recklessly done and without regard to propriety or the rights of the inmates of the house? If it was, it was done wantonly, and if it was done in both these ways, it was done wilfully and wantonly; and gentlemen, if you find as matter of fact that this wilful and wanton entry of the house provoked the dog to bite this plaintiff, then the defendant is not guilty.

To these rulings and instructions and refusals to instruct the plaintiff excepted.

*M. F. O'Brien and M. McCarthy,* for plaintiff.

A trespasser, whether he has entered upon the land or into the buildings of another, (unless he be a criminal wrong-doer) must be requested to depart from the premises, before force however slight can be applied to eject him; and that the force when necessary, must be reasonable, appropriate in kind, and suitable in degree to accomplish the object for which it is applied. *Johnson* v. *Patterson,* 14 Conn. 1; *Com.* v. *Clark,* 2 Met. 23; *Abt* v. *Burgheim,* 80 Ill. 94; *State* v. *Woodward,* 50 N. H. 527; *Com.* v. *Dougherty,* 107 Mass. 243; *Com.* v. *Power,* 7 Met. 596.

The degree of injury which the owner or occupant of a house is not justified in inflicting on a trespasser cannot by any construction of law be justified when inflicted by the owner or occupant's dog. What cannot be justified when done directly cannot be justified when done indirectly. *Johnson* v. *Patterson,* 14 Conn. 1; *Woolf* v. *Chalker,* 31 Conn. 122; *Loomis* v. *Terry,* 17 Wend. 496; *Hussey* v. *King,* 83 Maine, 568.

If a trespasser is injured by the attack of a dog, the owner or keeper of the dog is liable for such injury. *Woolf* v. *Chalker,* 31 Conn. 122; *Marble* v. *Ross,* 124 Mass. 44; *Meibus* v. *Dodge,* 38 Wis. 300; *Loomis* v. *Terry,* 17 Wend. 496; *Riley* v. *Harris,* 177 Mass. 163; *Glidden* v. *Moore,* 14 Neb. 84, 45 Am. Rep. 98; *Conway* v. *Grant,* 30 Am. St. Rep. 147. (88 Geo. 157).

The owner of a wild animal (and the law in this State is the same in regard to a dog), cannot be relieved from liability by any act of the person injured, unless it be one from which it can be affirmed

that he caused the injury himself, with a full knowledge of the prob-able consequences. *Muller* v. *McKesson*, 73 N. Y. 195, and quoted in *Hussey* v. *King*, 83 Maine, 568. See also *May* v. *Burdett*, 58 Eng. C. L. 99.

*D. J. McGillicuddy and F. A. Morey*, for defendant.

The jury found the entry to be as the defendant's wife said it was, under the rule given by the presiding justice to be wanton and wilful; and found that the wanton and wilful entry of the plaintiff provoked the dog to bite him. We have the curious spectacle of a man break-ing into the house of another, provoking a dog lawfully therein to bite him, and then suing the owner of the dog for damages. By what principle of either law or justice can a man, who receives an injury solely through his own wanton and wilful act, ask another to pay for it?

In the exhaustive opinion of *Hussey* v. *King*, 83 Maine, p. 576, this court said: "It should be noticed, however, that we only decide that, in such actions, as this, the plaintiff need not allege and prove in the first instance his own care. Whether the plaintiff's want of care can be successfully shown in defense or whether only the plain-tiff's wilful provocation of the animal will bar this action we do not decide, as that question is not presented by these exceptions." It is held in *Keightlinger* v. *Egan*, 65 Ill. p. 235, "If a person provokes or causes a dog to bite him by kicking or other aggressive acts, and not from any mischievous propensity of the dog, no action can be maintained by the party bitten."

In *Muller* v. *McKesson*, 73 N. Y. p. 201, the court say: "If a person with full knowledge of the evil propensities of an animal wantonly excites him or voluntarily puts himself in the way of such an animal, he would be adjudged to have brought the injury upon himself, and ought not to be entitled to recover. In such a case it cannot be said in a legal sense that the keeping of the animal which is the gravamen of the offense produced the injury. Citing: *Coggs-well* v. *Baldwin*, 15 Vt. p. 404; *Wheeler* v. *Brant*, 23 Barb. p. 324; *Blackman* v. *Simmons*, 3 Car. and P. 138; *Brock* v. *Copeland*, I. Esp. p. 203; *Bird* v. *Holbrook*, 4 Bing. p. 628.

On page 202 of *Muller* v. *McKesson*, 73 N. Y. supra, the court

say: "To enable an owner of such an animal to interpose this defense (negligence of plaintiff) acts should be proved . . . . which would establish that the person injured voluntarily brought the calamity upon himself."

In the same case on page 204 the court say: "I think in view of all the authorities, that the rule of liability before indicated is a reasonable one, and that the owner cannot be relieved from it by any act of the person injured, unless it be one from which it can be affirmed that he caused the injury himself." The case of *Coggswell* v. *Baldwin,* 15 Vt. p. 402, cited above was for a cow hooking a horse and the court say: "If the injury, in such a case, is received by the negligence of the owner of the animal injured he will not be entitled to recover." The court must assume as the jury found: First, that the plaintiff entered the house of the defendant wantonly and wilfully. Second, that it was the wanton and wilful entry solely by the plaintiff of the defendant's house that caused the injury. The dog had a right to live, the defendant had a right to keep him. Neither the defendant or his dog was to blame for the dog biting the plaintiff, but the injury resulted solely to the plaintiff through his own wilful and wanton act. The decisions are unanimous in holding that in such cases the plaintiff cannot recover.

SITTING: EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

EMERY, J. Upon reading in the bill of exceptions that the defendant's dog was provoked by the wilful and wanton entrance of the plaintiff, a peddler, into the defendant's house without permission and thereupon bit him, the first and natural impulse, especially of one who likes dogs and dislikes peddlers, probably would be to say that the plaintiff was rightly served and had no cause of action. But the law does not always accord with natural impulses. Indeed its purpose often is to restrain and control them. The plaintiff's right in this case is not to be determined by passionate impulses however natural, but by the passionless rules of positive law.

At common law the owner or keeper of a dog or a domestic animal was liable for damages done by the animal only in case the animal

had a vicious or mischievous disposition known to the owner or keeper. We have a statute, however, which makes the owner or keeper of a dog liable for damage done by it without regard to the disposition of the dog, or the owner or keeper's knowledge, or his care or want of care. "When a dog does damage to a person  .  .  .  .  his owner or keeper forfeits to the person injured the amount of the damage done, to be recovered in an action of trespass." Public Laws of 1895, c. 115. By this statute the damage done by a dog is made a trespass, since a trespass action is prescribed as the remedy. A damage to the person by a dog is a trespass to the person, as much so as an assault and battery. *Hussey* v. *King*, 83 Maine, 568; *Pressey* v. *Wirth*, 3 Allen, 191. Evidence of the character or disposition of the dog is not admissible. *Kelly* v. *Alderson*, 37 Atl. Rep. 12 (R. I.). The fact that the dog did the damage merely in play, in exuberance of good nature, is immaterial. The owner is nevertheless liable. *Hathaway* v. *Tinkham*, 148 Mass. 85. The plaintiff's action is upon this statute.

In considering the defense set up in avoidance of this statute, the following circumstances should be noted: the entry was in the day time; it does not appear that the plaintiff was forbidden to enter, or that his entry was made with any ulterior wrong intent, or noisily, or with threats or alarming demonstrations, or in any other manner than quietly though abruptly and suddenly; it does not appear that any of the human inmates were at all alarmed, or disturbed, or even annoyed by the entry; it does not appear that the plaintiff made any attack upon or demonstration toward the dog, or came in contact with it or was aware of its presence; it does not appear that the dog was a watch-dog set to guard the house, but it rather appears that it was only a common hound, or hunting dog, lying behind the stove; and it does not appear that the plaintiff was requested to leave or that he gave offense to any other inmate.

Under these circumstances a similar attack upon the plaintiff by any human inmate of the house would have been a trespass for which the plaintiff could have recovered. Though himself a trespasser, he was not thereby outlawed and force could not have been lawfully used upon him until he had refused to leave, and then only

such force as would have been necessary to remove him. If protected by the law against a sudden attack without warning by any human inmate despite his trespass,- was he not also protected by the law as embodied in the above statute against the sudden and precipitate bite of the dog? Again, under the above circumstances had the entry been by permission, express or implied, then, however much it provoked the dog, the defendant would not have been exempted from liability under the statute for its attack. We assume the correctness of this proposition to be too plain for argument.

Does the fact that the plaintiff's entry was without permission discharge the defendant from what would otherwise have been his statutory liability? We think not. It was the visible, physical aspect of the entry, not the want of permission for it, that provoked the dog. We cannot attribute to the dog the faculty of determining whether the entry was a trespass or not, and of inflicting or withholding his bite accordingly. It is immaterial that the dog did not see any permission given. Had it been given days before in the dog's absence, or simply inferable from the custom of the neighborhood or the intimacy of the parties, the legal effect would have been the same as if expressly and audibly given in the dog's presence.

We do not find any case holding that mere trespass, an entry without permission upon the real estate of the owner of a dog without any other provocation to the dog, exempts the owner from liability. We find several holding the contrary. Since by the statute the liability of the owner or keeper of a dog of the most peaceful disposition, kept with the utmost care, is made equal to the common law liability of the owner or keeper of an animal with a known vicious or mischievous disposition, cases at common law as to such liability are applicable to cases under the statute. In *Smith* v. *Pelah*, 2 Stra. 1264, the plaintiff accidentally trod upon the dog at the owner's own door. Held, that the owner was liable. In *Pieot* v. *Moller*, 3 E. D. Smith, 576 (N. Y.) it was held that the fact that the injured person was trespassing upon the owner's premises at the time the injury from the dog was received is immaterial. In *Loomis* v. *Terry*, 17 Wend. 496, 31 Am. Dec. 306, the person injured by the dog was at the time trespassing on the owner's premises; but it was held that that

fact did not exempt the owner from liability. *Woolf* v. *Chalker*, 31 Conn. 121, 81 Am. Dec. 175, a case much and approvingly quoted, was similar to the case at bar. The plaintiff, a peddler, entered a house without permission and upon so entering was attacked by a dog. The owner was nevertheless held liable. In *Sherfey* v. *Bartley*, 4 Sneed, 58, 67 Am. Dec. 597, the court below was held to have rightly refused a requested instruction that if, at the time of the injury to him by the dog, the plaintiff was trespassing upon the owner's premises the owner was not liable. In *Marble* v. *Ross*, 124 Mass. 44, the plaintiff while in the defendant's pasture was attacked by the defendant's stag kept in that pasture. The court below was held to have rightfully refused a requested instruction that if the plaintiff was trespassing in the pasture at the time of the attack, he could not recover. In *Meibus* v. *Dodge*, 38 Wis. 300, 20 Am. Rep. 6, the defendant had left his dog in his sleigh to guard it. The dog bit a child who came to the sleigh and meddled with the whip lying therein. Held that the defendant was liable. In *Peck* v. *Williams*, 61 L. R. A. 351, (R. I.) the plaintiff suddenly and without right climbed into the defendant's cart, and was bitten by the defendant's dog then lawfully in the cart. Held that the defendant was liable. In *Plumley* v. *Birge*, 124 Mass. 57, the plaintiff, a boy of thirteen, struck the dog and was thereupon bitten. A verdict for the plaintiff was sustained. In *Sanders* v. *O'Callaghan*, 82 N. W. Rep. 969, (Iowa) the court, citing some of the above cases, held to be incorrect the proposition that one going upon the premises of another without permission and without inquiring whether dogs are kept there or not is guilty of contributory negligence.

Does the circumstance that the plaintiff's entry was wilful and wanton discharge the defendant from his otherwise statutory liability? What we have said above as to the effect of the plaintiff's entry being without permission applies, we think, equally well to this question. The words "wilful and wanton," even as they were used and defined by the presiding justice, do not at all color or affect the visible, physical aspect of the entry. The wilfulness and wantonness were wholly in the plaintiff's mind. It was still only the visible, physical entry, not the plaintiff's thoughts or state of mind, which provoked the dog.

The most quiet entry, one that would not attract the attention of such a dog at all, may yet be both wilful and wanton to an extreme degree. A most turbulent and disturbing entry, one calculated to excite and provoke the most amiable dog, may be neither wilful nor wanton.

Our decision, therefore, and all that we do decide, is that the mere fact that the plaintiff wilfully and wantonly entered upon the defendant's premises without permission (such entry being the sole provocation of the dog's attack) does not alone outlaw the plaintiff from the protection of the statute cited.

Whether the plaintiff, as contended by the defendant, was so rude, noisy, or threatening in his manner of entry, as to thereby provoke the dog is a matter of fact not stated in the bill of exceptions. Whether the rude, noisy, or threatening character of the entry, if proved, or even its abruptness and suddenness as stated showed the plaintiff to be so far in fault as to bar his right of recovery, is a question not presented here. The presiding justice ruled that the fact, (if so found) that the entry was wilful and wanton and without permission, was of itself alone a bar. This ruling being adjudged incorrect, the exceptions must be sustained.

*Exceptions sustained.*